IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-03034-PAB-MEH

JOHN F. MEDVED, an individual,
DEBRA MEDVED, an individual, and
MEDVED CHEVROLET, INC., a Colorado corporation,

　　　　Plaintiffs,

v.

ALAN DEATLEY, an individual,
LESLIE A. POWERS, an individual,
POWERS & THERRIEN, P.S., a professional services corporation, and
RICHARD DAVIS, an individual,

　　　　Defendants.

_____

# ORDER

_____

　　　　This matter is before the Court on the Motion to Dismiss [Docket No. 19] filed by

defendants Leslie A. Powers and Powers and Therrien, P.S. ("P&T").  The Court has

subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

## I.  BACKGROUND

　　　　This case arises out of defendants Alan DeAtley and Richard Davis' sale of

income tax credits for conservation easements.  In Colorado, a taxpayer is allowed a

state income tax credit for a qualifying conservation easement that is donated to a

governmental entity or charitable organization.  Colo. Rev. Stat. § 39-22-522(2).  A

conservation easement is a permanent restriction that runs with the land for the

purpose of protecting and preserving that land in a predominantly natural, scenic, or

open condition.  *See* Colo. Rev. Stat. § 38-30.5-101 *et seq.* (establishing the purposes

and requirements for conservation easements); *see generally Kowalchik v. Brohl*, 277 P.3d 885, 886 (Colo. App. 2012).

Under the conservation easement tax credit program, a landowner who is entitled to a state income tax credit because of his conservation easement has the option of assigning to transferees all or any portion of the tax credit generated by any land donation.  Colo. Rev. Stat. § 39-22-522(7).  The donor landowner may only generate one such tax credit per year.  Colo. Rev. Stat. § 39-22-522(6).

On October 6, 2010, a Denver Grand Jury returned an indictment charging Mr. DeAtley and Mr. Davis with several counts of criminal conduct related to their sales of conservation easement tax credits.  *See People v. Alan Eugene DeAtley, et al.*, Case No. 10CR10309 (Colo. D. Ct. 2010) [indictment attached as Docket No. 29-1].  In the indictment, John F. Medved and Debra Medved, two of the plaintiffs here, are identified as victims of Mr. DeAtley and Mr. Davis' charged criminal activities.  *See id.* at 20-21.

In the complaint here, Mr. Medved alleges the following: Between 2005 and 2008, he purchased $376,000.00 worth of conservation easement tax credits from business entities controlled by Mr. DeAtley and Mr. Davis, Docket No. 5 at 3, ¶¶ 15-16; the Colorado Department of Revenue disallowed the conservation easement tax credits and, as a result, he is now subject to penalties and taxes because of tax deficiencies; *id.* at 6, ¶¶ 28-29; Mr. Powers and P&T, both citizens of Washington, aided and abetted Mr. DeAtley and Mr. Davis' fraudulent scheme when they "reviewed, vetted, and approved the Conservation Tax Credits," even though Mr. Powers and P&T "knew, or should have known, that the Conservation Tax Credits had no value and were simply part of a scheme to defraud transferees in the State of Colorado," *id.* at 4, ¶ 19; Mr.

2

Powers and P&T "knew that their legal services were being rendered in connection with property located in Jackson County, Colorado" and knew that their legal services "would adversely impact taxpayers in the State of Colorado," *id*. at ¶¶ 19-20; and Mr. Powers and P&T provided "substantial assistance" to Mr. DeAtley and Mr. Davis in furtherance of their illegal scheme.  *Id*. at 10-11, ¶¶ 77, 82, 86.

As a result of these events, plaintiffs assert ten claims for relief against all defendants.  As relevant to the issues raised in the present motion, plaintiffs bring claims under Colorado law against Mr. Powers and P&T for aiding and abetting fraud and deceit, aiding and abetting fraudulent misrepresentation, aiding and abetting negligent misrepresentation, conspiracy, and violations of the Colorado Organized Crime Control Act ("COCCA"), Colo. Rev. Stat. § 18-17-101 *et seq.*  Docket No. 5 at 10-12.  In addition, plaintiffs bring a claim against P&T for negligent supervision.  *Id*. at 11.

On December 14, 2012, Mr. Powers and P&T filed the present motion to dismiss plaintiffs' claims for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for failure to state a claim upon which the Court may grant relief pursuant to Fed. R. Civ. P. 12(b)(6).  Docket No. 19.[1]  Because only two of the defendants filed the present motion to dismiss, all references to "defendants" in this Order, unless otherwise indicated, are to Mr. Powers and P&T.

---

[1]On January 4, 2013, defendants notified the Court that they withdrew their motion to dismiss insofar as it sought to dismiss plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(7).  *See* Docket No. 26.

## II.  STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(2) is to assert that the Court lacks personal jurisdiction over the movant.  Plaintiffs bear the burden of establishing personal jurisdiction over defendants.  *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).  Plaintiffs can satisfy their burden by making a prima facie showing.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  The Court will accept as true "all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiffs' complaint" to determine whether plaintiffs have made a prima facie showing that personal jurisdiction exists.  *Id.* (citation omitted); *AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008).  If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further.  *Id.*  Plaintiffs, however, may also make this prima facie showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendants.  *Dudnikov*, 514 F.3d at 1070.  "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiffs' favor."  *Id*.

To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint need not allege specific facts, but need only give defendants fair notice of what the claim is and the grounds upon which it rests.  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted).  "A claim has facial plausibility when the

4

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.

## III.  ANALYSIS

### A.  Personal Jurisdiction

In a diversity action, a federal court has personal jurisdiction over a defendant if jurisdiction is consistent with the state's long-arm statute and if jurisdiction does not violate the due process clause of the Fourteenth Amendment.  *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074-75 (10th Cir. 2004).  The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent of the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process.  *See Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005); *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005).

Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that jurisdiction does not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).  Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction.  Where general jurisdiction is asserted over a nonresident defendant who has not consented to suit in the forum, minimum contacts exist if the plaintiff demonstrates that the defendant maintains "continuous and systematic general business contacts" in the state.  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).

Specific jurisdiction is present where the defendant has purposefully directed his activities at the residents of the forum and the litigation results from injuries that arise out of or relate to those activities.  *Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1298 (10th Cir. 1999).

### 1. General Jurisdiction

"Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test." *Benton*, 375 F.3d at 1080. General jurisdiction requires that a defendant have contacts with the forum "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, --- U.S. ----, 131 S.Ct. 2846, 2851, (2011); *see also Trujillo v. Williams*, 465 F.3d 1210, 1218 n. 7 (10th Cir. 2006).  Courts consider the frequency of a defendant's travel to the forum state, amount of work a defendant performs in the forum state, and whether a defendant owns property in the forum state.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

Defendants submit Mr. Powers' declaration in support of their motion.  Docket No. 19-1.  Mr. Powers is the president of P&T.  In his declaration, Mr. Powers states that he is not licensed to practice law in Colorado, *id.* at 1-2, ¶¶ 2-3; he and P&T do not own property in Colorado, have not performed any attorney work in Colorado, do not have offices or own any real property in Colorado, do not solicit or engage in any business in Colorado, do not pay taxes in Colorado, and Mr. Powers' only contacts with Colorado in the last twenty years are during layovers at the Colorado airport.  *Id.* at 2,

¶ 8.  Plaintiffs do not submit any evidence to the contrary.  Based on the foregoing, the Court finds that Mr. Powers' layovers in Colorado are too random and attenuated to rise to the level of continuous and systematic business contacts necessary to confer general jurisdiction.  *Benton*, 375 F.3d at 1080.  Accordingly, plaintiffs have not alleged sufficient facts to establish that the Court's exercise of general jurisdiction over defendants is appropriate.

### 2.  *Specific Jurisdiction*

The specific jurisdiction analysis is two-fold.  First, the Court must determine whether defendants have such minimum contacts with Colorado that defendants "should reasonably anticipate being haled into court" here.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Within this inquiry, the Court must determine whether defendants purposefully directed their activities at residents of the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, (1985), and whether plaintiffs' claims arise out of or result from "actions by . . . defendant[s] . . . that create a substantial connection with the forum State."  *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987) (internal quotations omitted).  Second, if defendants' actions create sufficient minimum contacts, the Court must consider whether the exercise of personal jurisdiction over defendants offends "traditional notions of fair play and substantial justice."  *Id.* at 113.  This latter inquiry requires a determination of whether the Court's exercise of personal jurisdiction over defendants is "reasonable" in light of the circumstances of the case.  *Id*.

As noted above, it is undisputed that defendants do not reside in Colorado, do not own property in Colorado, are not licensed to practice law in Colorado, and that plaintiffs' claims are predicated on defendants' provision of legal services in the State of Washington.  Thus, in order for plaintiffs to make a prima facie showing of personal jurisdiction, plaintiffs must show that defendants' alleged intentional tortious conduct in the State of Washington was "expressly directed at causing a harmful effect within the" State of Colorado.  *D & D Fuller CATV Constr., Inc. v. Pace,* 780 P.2d 520, 525-26 (Colo. 1989); *see also Nat'l Bus. Brokers Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1255 (D. Colo. 2000) (noting that "[a]llegations that a defendant's acts in another state ultimately caused injury in Colorado, and thus constituted a tort here, suffice as a prima facie showing of threshold jurisdiction") (citation omitted).

Generally, to determine whether a nonresident defendant's contacts with the forum state are sufficient to establish personal jurisdiction over the defendant – even if defendant is not physically present in the forum state – courts inquire as to whether: (1) the defendant purposefully directed its activities at residents of the forum state; (2) the plaintiff's injury arose from those purposefully directed activities; and (3) exercising jurisdiction over the defendant based on these activities would not offend traditional notions of fair play and substantial justice.[2]  *Dudnikov*, 514 F.3d at 1070; Colo. Rev.

_____

[2]Several circuits have taken the view that the determination of specific personal jurisdiction is a claim-specific inquiry, meaning that a conclusion that the court has personal jurisdiction over one defendant as to a particular claim does not necessarily mean that the court has personal jurisdiction over that same defendant as to other claims by the same plaintiff.  *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274-75 (5th Cir. 2006); *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001).  The Tenth Circuit has yet to adopt this view.  *See Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 93 n.4 (10th Cir. 2012) (declining to decide whether the specific jurisdiction

8

Stat. § 13-1-124(1)(b); *Waterval v. Dist. Court In & For El Paso Cnty.*, 620 P.2d 5, 9

(Colo. 1980).  Plaintiffs argue that the Court may exercise specific personal jurisdiction

over defendants because (1) defendants' out-of-state tortious conduct resulted in injury

within the State of Colorado and (2) defendants performed legal services on behalf of

Mr. DeAtley and Mr. Davis in furtherance of an unlawful scheme that had injurious

effects in Colorado.  Docket No. 27 at 4-8.

### a.  Purposeful Direction Elements

In tort lawsuits, the element of "purposeful direction" has three prongs: "(a) an

intentional action . . . that was (b) expressly aimed at the forum state . . . with (c)

knowledge that the brunt of the injury would be felt in the forum state."  *Dudnikov*, 514

F.3d at 1072; *Pace*, 780 P.2d at 525-26; *Calder v. Jones*, 465 U.S. 783 (1984).

To satisfy the first prong, plaintiffs need only allege that defendants took some

intentional act.[3]  *Dudnikov*, 514 F.3d at 1073-74.  Plaintiffs here allege that defendants

"reviewed, vetted, and approved the Conservation Tax Credits when they knew, or

should have known, that the Conservation Tax Credits had no value and were simply

part of a[n unlawful] scheme to defraud transferees in the State of Colorado."  Docket

---

analysis must be made on a claim-by-claim basis).  Neither party has presented its
specific jurisdiction analysis on a claim-by-claim basis.  Thus, the Court will not opine
on the appropriateness of this mode of analysis.

[3]The Court notes that the Tenth Circuit has yet to decide "whether under *Calder*
[*v. Jones*, 465 U.S. 783 (1984)] plaintiffs must also allege that the [intentional] act itself
was wrongful or tortious in some sense."  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
514 F.3d 1063, 1072 (10th Cir. 2008); *accord Grynberg v. Ivanhoe Energy*, 490 F.
App'x 86, 97 (10th Cir. 2012).  The Court need not decide this issue because plaintiffs
allege that defendants' actions were intentional and wrongful.  *See* Docket No. 5 at 9-
12.

No. 5 at 4, ¶ 19.  Based on these allegations, the Court finds that plaintiffs have satisfied the intentional act prong because plaintiffs allege that defendants intentionally committed wrongful acts.  *Dudnikov*, 514 F.3d at 1073-74.

The expressly aimed test focuses on defendants' intentions and seeks to determine the "focal point" of defendants' purposive efforts.  *Dudnikov*, 514 F.3d at 1074-75.  Plaintiffs allege that defendants "knew that their legal services were being rendered in connection with property located in Jackson County, Colorado" and that the legal services "would adversely impact taxpayers in the State of Colorado."  Docket No. 5 at 4, ¶¶ 19-20.  Based on these allegations, the Court finds that plaintiffs have satisfied the expressly aimed prong because they allege that Colorado was the focal point of defendants' provision of legal services.  *Dudnikov*, 514 F.3d at 1074-75.  In other words, defendants knew that the conservation easement tax credits would be used by Colorado taxpayers in connection with property located in Jackson County, Colorado.

The final prong of the purposeful direction test is defendants' knowledge that the brunt of the activity would be felt in Colorado.  *Dudnikov*, 514 F.3d at 1077.  This element "concentrates on the consequences of the defendant[s'] actions – where was the alleged harm actually felt by the plaintiff."  *Id*. at 1075.  Given that plaintiffs allege that defendants knew the conservation easement tax credits would be used in connection with property located in Colorado, the Court finds that it is plausible to infer that defendants knew that the brunt of any injury arising from their legal services would be felt in Colorado.  *Id*.

10

Accordingly, plaintiffs have satisfied the three prongs of the purposeful direction element.

## b.  Arising Out Of

Aside from purposeful direction, the specific personal jurisdiction test requires that plaintiffs' injuries arise out of defendants' forum related activities. *Dudnikov*, 514 F.3d at 1071.  The Tenth Circuit has identified the but-for test and the proximate cause test to determine whether plaintiffs' injuries arise out of defendants' forum related activities. *Dudnikov*, 514 F.3d at 1078.  Under the but-for approach, "any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction." *Id*.  The proximate cause test, by contrast, "is considerably more restrictive and calls for courts to 'examine whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim.'" *Id*.

Plaintiffs allege that defendants knowingly acted in furtherance of an unlawful scheme to defraud Colorado taxpayers by approving conservation easement tax credits defendants knew would be used in Colorado.  Docket No. 5 at 4, ¶¶ 19-20.  In this case, the question of whether defendants knowingly provided legal services in the State of Washington as part of an unlawful scheme to defraud Colorado taxpayers is relevant to the merits of all five of plaintiffs' claims.  Accordingly, the Court finds that plaintiffs' allegations satisfy the more restrictive proximate cause test.[4]

---

[4]Defendants argue that there are potential defects with the substance of plaintiffs' allegations, Docket No. 35 at 2; however, the Tenth Circuit has cautioned that "it is important to keep the 12(b)(2) and 12(b)(6) analyses distinct." *Newsome v. Gallacher*, 722 F.3d 1257, 1270-71 (10th Cir. 2013).  The important question for the

### c. Fair Play and Substantial Justice

Because plaintiffs have satisfied the minimum contacts analysis, the burden now shifts to defendants to demonstrate that exercising personal jurisdiction would nonetheless "offend traditional notions of fair play and substantial justice." *Dudnikov*, 514 F.3d at 1080 (internal citation omitted). To satisfy this burden, defendants must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. This usually involves consideration of the following factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*OMI Holdings*, 149 F.3d at 1095.

With regard to burden, the Court finds that, although it is a burden for defendants to travel from Washington to Colorado to defend this lawsuit, such travel costs do not weigh heavily in defendants' favor because defendants do not assert that their defense of this case would be hindered by the prosecution of this case in Colorado. *See Newsome v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013) (noting that travel from Alberta, Canada to Oklahoma was not a substantial burden); *Dudnikov*, 514 F.3d at 1081 (noting that, "in any case in which the parties reside in different fora, one side must bear the inconvenience of litigating 'on the road'").

---

"arising out of" element is whether plaintiffs' claimed injury resulted from defendants' forum-related activities. In this case, the answer is yes. Whether or not plaintiffs can present a legal theory that would hold defendants liable is a merits question that the Court will address in its Rule 12(b)(6) discussion.

With regard to the forum state's interest in resolving the dispute, "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI Holdings*, 149 F.3d at 1096.  Because plaintiffs suffered their injury in Colorado and these injuries relate to a Colorado statutory scheme, the Court finds that Colorado has an important interest in providing a forum for plaintiffs to seek redress for their injuries.  Thus, this factor also weighs in favor of finding personal jurisdiction over defendants.

The third factor "hinges on whether the [p]laintiff[s] may receive convenient and effective relief in another forum," *Benton*, 375 F.3d at 1079, and the fourth factor asks "whether the forum state is the most efficient place to litigate the dispute."  *Id*. at 1080 (citations omitted).  The Court finds that both of these factors are essentially neutral since there is no evidence that plaintiffs could not receive effective relief in Washington or that Colorado is the most efficient place to litigate the dispute.  Because there is no indication that Washington is a better forum to litigate this case, the Court finds that defendants have not shown that both of these factors weigh in their favor.  *Cf. OMI Holdings*, 149 F.3d at 1097 (noting that plaintiff's interest in convenient and effective relief "may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit").

With regard to the fifth factor, key "to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs

13

the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *OMI Holdings*, 149 F.3d at 1097.  First, although it is impossible at this stage to determine where the witnesses will be located, the likelihood is that most witnesses and much of the documentary evidence will be evenly split between Colorado and Washington. Second, the wrong underlying the lawsuit occurred in Colorado, since this is the location of plaintiffs' injuries.  *Newsome*, 722 F.3d at 1274.  Third, the parties do not dispute that Colorado law applies to the claims at issue in this action and, fourth, Colorado jurisdiction is not necessary to prevent piecemeal litigation of this case.  Thus, on balance, the interstate factors are effectively neutral.  As a result, the Court finds that defendants have not met their burden of showing that "the interstate judicial system's interest in obtaining the most efficient resolution of controversies" necessarily favors a forum other than Colorado.  *Id.*

Accordingly, the Court finds that the exercise of specific personal jurisdiction here does not "offend traditional notions of fair play and substantial justice," and the Court may exercise personal jurisdiction over defendants.

## B.  Rule 12(b)(6) Analysis

As noted above, plaintiffs assert five claims against defendants for aiding and abetting fraud and deceit, aiding and abetting fraudulent misrepresentation, aiding and abetting negligent misrepresentation, conspiracy, and violations of the COCCA.  Docket No. 5 at 10-12.  Defendants request that the Court dismiss plaintiffs' claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  Docket No. 19 at 8-9.

14

### 1. Aiding and Abetting Fraud and Deceit

Plaintiffs allege that defendants "reviewed, vetted, and approved the Conservation Tax Credits ultimately purchased by [Mr.] Medved" and "rendered substantial assistance to [Mr.] DeAtley" in defrauding Mr. Medved. Docket No. 5 at 10, ¶¶ 76-77. In addition, plaintiffs claim that defendants "intended their conduct to defraud transferees in Colorado . . . by inducing the purchase of the Conservation Tax Credits." *Id*. at ¶ 78.

To establish a prima facie case of common law fraud, a plaintiff must present evidence that: (1) the defendant made a false representation of a material fact; (2) the defendant knew the representation was false; (3) the plaintiff did not know of the falsity of the defendant's representation; (4) the defendant made the representation with the intent that plaintiff act upon the representation; and (5) the representation resulted in damages. *Brody v. Bock*, 897 P.2d 769, 775-76 (Colo. 1995). The Colorado Supreme Court has not addressed whether plaintiffs can assert claims for aiding and abetting common law fraud. *Stat-Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1339 (D. Colo. 1997). One Colorado Court of Appeals case has indicated that a defendant may be liable for aiding and abetting a tortious act if a "defendant is generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance, and the defendant knowingly and substantially assists the principal violation." *Holmes v. Young*, 885 P.2d 305, 308 (Colo. App. 1994). As explained in *Sender v. Mann*, 423 F. Supp. 2d 1155, 1175-76 (D. Colo. 2006), aiding and abetting common law fraud requires that the defendant "knowingly" participate in the underlying

breach or violation and is not satisfied by "reckless or negligent conduct." For the purposes of this motion, the Court will assume, based on the charges in the indictment, that plaintiffs have sufficiently alleged that Mr. DeAtley has committed common law fraud.

In order to establish that defendants aided and abetted Mr. DeAtley's fraud, plaintiffs must allege that defendants knew or were aware that Mr. DeAtley's statements about the conservation easement tax credits were fraudulent. Although plaintiffs' complaint includes facts about what defendants allegedly did (review and approve conservation easement tax credits) and what defendants knew about the purpose of their legal services (the conservation easement tax credits would be used in connection with property located in Colorado), plaintiffs allege no facts detailing the basis for defendants' knowledge of Mr. DeAtley's fraudulent activity. The complaint does not present facts detailing why or how defendants would have known that Mr. DeAtley's conservation easement tax credits were fraudulent. Plaintiffs do not assert that all work performed in connection with the conservation easement tax credits is necessarily unlawful. In addition, plaintiffs do not allege or assert that there was something specific about the conservation easement tax credits that defendants reviewed which should have alerted defendants of the tax credits' fraudulent nature. Moreover, plaintiffs' complaint does not provide sufficient factual allegations explaining why defendants "knew or should have known" of Mr. DeAtley's fraudulent scheme when they performed legal services in connection with the conservation easement tax credits. *Iqbal*, 556 U.S. at 679 (noting that well-pleaded allegations are insufficient if they "do not permit the court to infer more than the mere possibility of misconduct"). At most, plaintiffs'

16

allegations show that defendants knew that Mr. DeAtley intended to sell the conservation easement tax credits in Colorado, but plaintiffs' allegations do not allow the Court to plausibly infer that defendants knew or were aware that Mr. DeAtley's conservation easement tax credits were fraudulent. *See Sender*, 423 F. Supp. 2d at 1176 (noting that "aiding and abetting requires actual knowledge and is not satisfied by reckless or negligent conduct").

Accordingly, without allegations from which the Court can plausibly infer that defendants knew of Mr. DeAtley's fraudulent activity, the Court finds that plaintiffs' allegations about defendants' knowledge are insufficient to plausibly allege that defendants aided and abetted Mr. DeAtley's fraudulent activity. *See Sender*, 423 F. Supp. 2d at 1175-76; *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008) (noting that plausible does not mean the allegations are "likely to be true," but rather that they are "enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief"). Therefore, the Court will dismiss plaintiffs' sixth claim for relief for failure to state a claim. *Id.*

## 2.  *Aiding and Abetting Fraudulent Misrepresentations*

Plaintiffs allege that defendants aided and abetted Mr. DeAtley's fraudulent misrepresentations. Docket No. 5 at 10-11. Plaintiffs claim that defendants "reviewed, vetted, and approved the Conservation Tax Credits ultimately purchased by [Mr.] Medved" and "rendered substantial assistance to [Mr.] DeAtley" in defrauding Mr. Medved. Docket No. 5 at 11, ¶¶ 81-82. In addition, plaintiffs assert that defendants "knew or should have known that their legal services would be used in connection with

17

and to support [Mr.] DeAtley's fraudulent misrepresentations made and causing damage in Colorado." *Id*. at ¶ 82.

Although plaintiffs raise a claim of aiding and abetting fraudulent misrepresentation, plaintiffs provide no caselaw showing that such a claim is cognizable under Colorado law.[5]  Assuming, solely for the purposes of this motion, that the rationale from *Holmes v. Young*, 885 P.2d 305, 308 (Colo. App. 1994), extends to claims of fraudulent misrepresentation, the Court nevertheless finds that the complaint's allegations are insufficient to support an inference that defendants knew that Mr. DeAtley was engaged in fraudulent activity when defendants performed legal services on Mr. DeAtley's behalf.

The elements of fraudulent misrepresentation are (1) a fraudulent misrepresentation of material fact by a defendant, (2) plaintiff's reliance on the material misrepresentation, (3) plaintiff's justified reliance on the misrepresentation, and (4) resulting damages to plaintiff.  *Nielson v. Scott*, 53 P.3d 777, 779-80 (Colo. App. 2002). For the purposes of this motion, the Court will assume, based on the charges in the indictment, that plaintiffs have sufficiently alleged that Mr. DeAtley made fraudulent misrepresentations to plaintiffs.

---

[5]Plaintiffs cite *Anstine v. Alexander*, 128 P.3d 249, 256 (Colo. App. 2005) *rev'd on other grounds*, *Alexander v. Anstine*, 152 P.3d 497 (Colo. 2007), for the proposition that they may assert aiding and abetting claims against defendants even though they have never had a fiduciary relationship with defendants.  Docket No. 27 at 9-10.  The Court is not convinced, however, because *Anstine* dealt with a breach of fiduciary duty claim and relied primarily on *Holmes* to find that the plaintiff could sustain a claim.  *See* 128 P.3d at 255-56.

To establish that defendants aided and abetted Mr. DeAtley's fraudulent misrepresentations, plaintiffs must show that defendants knew that Mr. DeAtley made fraudulent misrepresentations in connection with the conservation easement tax credits. To demonstrate defendants' knowledge, plaintiffs rely on the same facts discussed above in relation to the aiding and abetting common law fraud claim. *See, e.g.,* Docket No. 5 at 11, ¶¶ 81-82 (noting that defendants "reviewed, vetted, and approved the Conservation Tax Credits . . . [and] rendered substantial assistance"); *id*. at ¶¶ 82-83 (defendants "knew or should have known that their legal services would be used in connection with and to support [Mr.] DeAtley's fraudulent misrepresentations"). Plaintiffs, however, allege no facts detailing the basis for defendants' knowledge of Mr. DeAtley's fraudulent misrepresentations. The complaint does not present facts detailing why or how defendants would have known that Mr. DeAtley's conservation easement tax credits were fraudulent. Moreover, plaintiffs' complaint does not provide sufficient factual allegations explaining why defendants "knew or should have known" of Mr. DeAtley's fraudulent scheme when they performed legal services in connection with the conservation easement tax credits. *Iqbal*, 556 U.S. at 679 (noting that well-pled allegations are insufficient if they "do not permit the court to infer more than the mere possibility of misconduct"). Plaintiffs' allegations, at best, show that defendants knew that Mr. DeAtley intended to sell the conservation easement tax credits in Colorado, but not that defendants knew or were aware of Mr. DeAtley's fraudulent misrepresentations regarding the conservation easement tax credits. As a whole, there are no well-pled allegations in the complaint raising a plausible inference that defendants were aware that their legal work in connection with the conservation easement tax credits was part

19

of Mr. DeAtley's wider fraudulent activity.  *Stat-Tech Liquidating Trust*, 981 F. Supp. at

1339.  Accordingly, the Court finds that plaintiffs' allegations about defendants'

knowledge are insufficient to plausibly allege that defendants aided and abetted Mr.

DeAtley's fraudulent misrepresentations.  *See Sender*, 423 F. Supp. 2d at 1175-76.

Therefore, the Court will dismiss plaintiffs' seventh claim for relief for failure to state a

claim.  *Holmes*, 885 P.2d at 308.

### 3.  *Aiding and Abetting Negligent Misrepresentations*

Plaintiffs allege that defendants aided and abetted Mr. DeAtley's negligent

misrepresentations.  Docket No. 5 at 10-11.  Plaintiffs claim that defendants "reviewed,

vetted, and approved the Conservation Tax Credits ultimately purchased by [Mr.]

Medved" and "rendered substantial assistance to [Mr.] DeAtley" in defrauding Mr.

Medved.  Docket No. 5 at 11, ¶¶ 85-86.  In addition, plaintiffs claim that defendants

"knew or should have known that their legal services would be used in connection with

and to support [Mr.] DeAtley's fraudulent misrepresentations in the State of Colorado."

*Id*. at ¶ 86.

The elements of a claim of negligent misrepresentation are: (1) one in the course

of his or her business, profession or employment; (2) makes a misrepresentation of a

material fact, without reasonable care; (3) for the guidance of others in their business

transactions; (4) with knowledge that his or her representations will be relied upon by

the injured party; and (5) the injured party justifiably relied on the misrepresentation to

his or her detriment.  *Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011).  For the purposes

of this motion, the Court will assume, based on the charges in the indictment, that

plaintiffs have sufficiently alleged that Mr. DeAtley made negligent misrepresentations. Here, as with the fraudulent misrepresentation claim, the Court finds that, assuming aiding and abetting negligent misrepresentation is actionable in Colorado, plaintiffs' complaint does not sufficiently allege that defendants knew or were aware that the legal services performed for Mr. DeAtley were in furtherance of Mr. DeAtley's negligent misrepresentations. *See Sender*, 423 F. Supp. 2d at 1175-76. Accordingly, the Court will dismiss plaintiffs' eighth claim for relief for failure to state a claim. *Holmes*, 885 P.2d at 308.

### 4.  *Civil Conspiracy*

Plaintiffs allege that, "[t]o the extent the allegations in the Indictment are true," Mr. DeAtley, Mr. Powers, and P&T "agreed, by words or conduct, to accomplish an unlawful goal through unlawful means – namely, vetting, promoting, and selling worthless and bogus Conservation Tax Credits to innocent transferees in the State of Colorado." Docket No. 5 at 12, ¶ 93. Plaintiffs further assert that defendants performed acts in furtherance of the conspiracy when they "reviewed, vetted, and approved the Conservation Tax Credits when they knew, or should have known, that such credits were worthless and not bona fide credits." *Id*. at ¶ 94(b).

In Colorado, a civil conspiracy claim requires: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as the proximate result. *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989). The essence of a civil conspiracy claim is not the conspiracy itself, but the actual damages resulting from it. *Id.* Moreover,

courts are not to infer the agreement necessary to form a conspiracy; evidence of such an agreement must be presented by the plaintiff.  *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995).  Although plaintiffs need not allege an express agreement, they must at the very least allege "a course of conduct and other circumstantial evidence . . . [providing] some indicia of agreement in an unlawful means or end."  *Schneider v. Midtown Motor Co.*, 854 P.2d 1322, 1327 (Colo. App. 1992).

The Court finds that plaintiffs' complaint does not allege any facts tending to show a meeting of the minds between defendants and either Mr. DeAtley or Mr. Davis. *See Scott v. Hern*, 216 F.3d 897, 918 (10th Cir. 2000) (applying Colorado law). Although plaintiffs rely on the indictment to show a meeting of the minds in furtherance of a conspiracy, none of the claims or facts raised in the indictment mention Mr. Powers or P&T.  *See generally* Docket No. 29-1.  The complaint provides no other facts that plausibly show an agreement in furtherance of a conspiracy between defendants and Mr. DeAtley or Mr. Davis.  *Nelson*, 908 P.2d at 106.  Thus, although defendants performed legal services for Mr. DeAtley, such actions are not sufficient to plausibly allege an agreement towards the unlawful means alleged in this case, namely, the sale of fraudulent tax credits.  *Id*.  Accordingly, because plaintiffs do not sufficiently allege a meeting of the minds between defendants and Mr. DeAtley or Mr. Davis, the Court will dismiss plaintiffs' tenth claim for relief for failure to state a claim.  *Iqbal*, 556 U.S. at 679.

### 5.  COCCA

Plaintiffs allege that defendants violated the COCCA.  Docket No. 5 at 12, ¶ 97. In support, plaintiffs assert that defendants "were associated and participated in a

criminal enterprise as part of a concerted effort to violate Colorado law," *id*. at 13, ¶ 99,

and that the enterprise was an association between Mr. DeAtley and defendants

"whereby they agreed to promote, market, sell, and ultimately profit from the sale of

worthless Conservation Tax Credits in the State of Colorado." *Id*. at ¶ 100.  Plaintiffs

claim that defendants' racketeering activity is "reflected in the Indictment" and includes

crimes of "fraud upon the [Colorado] department of revenue." *Id*. at 13, ¶ 101.

Plaintiffs avers that defendants' predicate acts in furtherance of the enterprise include

defendants' review and approval of "Conservation Tax Credits to create an appearance

of legitimacy when, in fact, the Conservation Tax Credits were illegitimate." *Id*. at

¶ 102(c).

The COCCA makes it "unlawful for any person employed by, or associated with,

any enterprise to knowingly conduct or participate, directly or indirectly, in such

enterprise through a pattern of racketeering activity." Colo. Rev. Stat. § 18-17-104(3).

To state a primary violation of § 104(3), plaintiffs must show that defendants "(1)

through the commission of two or more predicate acts (2) which constitute a pattern (3)

of racketeering activity (4) directly or indirectly conducted or participated in (5) an

enterprise and (6) the plaintiff[s] w[ere] injured in [their] business or property by reason

of such conduct." *Sender*, 423 F. Supp. 2d at 1177 (citation omitted).  Defendants

argue that plaintiffs do not adequately allege the existence of an enterprise or

defendants' predicate acts.  Docket No. 35 at 7-8.

Because the predicate acts in plaintiffs' COCCA claim are based on fraudulent

conduct, plaintiffs' allegations must meet the heightened pleading standard of Rule

9(b).  Fed. R. Civ. P. 9(b).  Rule 9(b) requires that, for any claim alleging fraud, the

circumstances constituting fraud or mistake must be stated with particularity.  *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994) (holding that Rule 9(b) applies to common law fraud claims brought in federal court); *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006).

The Court finds that plaintiffs' COCCA claim does not satisfy the pleading requirements enunciated in *Iqbal* or the particularity requirement imposed by Rule 9(b). As with the rest of plaintiffs' claims discussed herein, the complaint does not sufficiently allege that defendants were aware that Mr. DeAtley and Mr. Davis were engaged in fraudulent activity.  *See Sender*, 423 F. Supp. 2d at 1178 (noting that failure to show defendant was aware of fraudulent activity was sufficient to reject liability under § 18-17-104(3)); Colo. Rev. Stat. § 18-17-104(3) ("It is unlawful for any person employed by, or associated with, any enterprise to *knowingly* conduct or participate, directly or indirectly, in such enterprise") (emphasis added).  Moreover, plaintiffs' reliance on the indictment is misplaced because the indictment does not mention or identify Mr. Powers or P&T.  Accordingly, because plaintiffs do not sufficiently allege that defendants knew of or agreed to participate in Mr. DeAtley's fraudulent activity, the Court will dismiss plaintiffs' eleventh claim for relief for failure to state a claim.  *Iqbal*, 556 U.S. at 679.

### 6.  *Negligent Supervision*

Plaintiffs allege that P&T was negligent in its supervision of Mr. Powers.  Docket No. 5 at 11, ¶ 89.  Plaintiffs claim that P&T failed to monitor Mr. Powers when he performed legal services on behalf of Mr. DeAtley and that this failure to supervise led to plaintiffs' damages. *Id*. at 11-12, ¶¶ 90-91.

The tort of negligent supervision applies to instances where an employee causes harm to a third party while acting outside the scope of his or her employment. *Keller v. Koca*, 111 P.3d 445, 448 (Colo. 2005). "To establish liability, the plaintiff must prove that the employer has a duty to prevent an unreasonable risk of harm to third persons to whom the employer knows or should have known that the employee would cause harm." *Id*. While the tort of negligent supervision applies to instances where the employee is acting outside his scope of employment, it does not extend to all acts undertaken by an employee that are actionable in tort. *Id*. In addition, the theory of negligent supervision is separate and independent from the theory of vicarious liability, under which an employer may be liable for torts committed by an employee working within the scope of his employment. *Id*. at n. 2.

Because the Court has dismissed plaintiffs' claims arising out of the legal services Mr. Powers performed for Mr. DeAtley, plaintiffs cannot sustain a claim of negligent supervision because plaintiffs have suffered no harm from Mr. Powers' actions. *See Keller*, 111 P.3d at 448. Therefore, the Court will dismiss plaintiffs' ninth claim for relief for failure to state a claim. *Iqbal*, 556 U.S. at 679.

### C.  Motion for Leave to Amend

On January 15, 2013, plaintiffs filed a Conditional Motion for Leave to Amend Complaint [Docket No. 29]. In their motion, plaintiffs request that the Court grant them leave to file an amended complaint should the Court find their factual averments are insufficient to survive defendants' motion to dismiss. Docket No. 29 at 7. In support, plaintiffs state that they have been unable to perform sufficient discovery to support

their claims in this case because of Mr. DeAtley's ongoing criminal investigation and the

fact that the Attorney General's office has seized voluminous records from Mr. DeAtley.

*Id*. at 4-6.  Plaintiffs do not attach a proposed amended complaint to their motion.

Rule 15(a) of the Federal Rules of Civil Procedure instructs courts to "freely give

leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a).  Nevertheless,

denying leave to amend is justified if the proposed amendments are unduly delayed,

unduly prejudicial, futile, or sought in bad faith.  *Foman v. Davis*, 371 U.S. 178, 182

(1962); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).  As a general rule,

the Court retains the discretion to permit such amendments.  *Minter v. Prime Equip.*

*Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).

As noted above, the Court finds that plaintiffs' complaint does not plausibly

assert claims against defendants.  In their conditional motion for leave, plaintiffs do not

attempt to bolster the sufficiency of their complaint or allege additional facts to

substantiate their allegations.  Furthermore, plaintiffs do not request leave to conduct

discovery or even identify specific facts they could *plausibly* uncover through discovery.

Instead, plaintiffs maintain their broad accusations against defendants and insist that

they could establish their claims through discovery.  However, as the Supreme Court

noted, the Rule 8 pleading standard "does not unlock the doors of discovery for a

plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

Moreover, the Court "is not required to imagine all possible amendments and determine

whether any would state" a plausible claim for relief.  *Toone v. Wells Fargo Bank, N.A.*,

716 F.3d 516, 524 (10th Cir. 2013).  Rather, plaintiff must submit a proposed

amendment for the court's consideration or at least specify how any proposed amendment would cure the complaint's deficiencies.  *Id*.; *Hall v. Witteman*, 584 F.3d 859, 868 (10th Cir. 2009) (noting the same).  Thus, while discovery could help plaintiffs discover additional facts, the conclusory nature of plaintiffs' complaint and their failure to identify potential facts they may discover simply affirms that the facial plausibility of plaintiffs' claims against defendants is lacking in this case.  Accordingly, because plaintiffs failed to plead their claims with the required plausibility or present any reason from which the Court may reasonably infer that they could uncover facts to state plausible claims, the Court will deny plaintiffs' conditional motion for leave.  *See Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."); *see also Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 784 (6th Cir. 2000) (noting that plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies).

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Motion to Dismiss (Leslie A. Powers and Powers & Therrien, P.S.) [Docket No. 19] is **GRANTED**.  It is further

**ORDERED** that Plaintiffs' Conditional Motion for Leave to Amend Complaint [Docket No. 29] is **DENIED**.  It is further

**ORDERED** that plaintiffs' sixth, seventh, eighth, ninth, tenth, and eleventh claims against defendants Leslie A. Powers and Powers & Therrien, P.S. are dismissed.  It is further

**ORDERED** that defendants Leslie A. Powers and Powers & Therrien, P.S. are dismissed from this case.  It is further

**ORDERED** that, within 14 days of this Order, Leslie A. Powers and Powers & Therrien, P.S. may file their bill of costs with the Clerk of the Court.

DATED September 11, 2013.

BY THE COURT:

 s/Philip A. Brimmer                                    
PHILIP A. BRIMMER
United States District Judge